## WILLOUGHBY v. STATE TAX COMMISSION

Sam F. Kyle and Richard T. Kropp, Albany, tried the cause for plaintiffs. Sam Kyle and Willis, Kyle and Emmons filed briefs for plaintiffs.

Gerald F. Bartz, Assistant Attorney General, Salem, tried the cause and submitted a brief for defendant.

Decision for plaintiffs rendered January 31, 1964.

PETER M. GUNNAR, Judge.

This is a suit to set aside defendant's Opinion and Order No. I-63-4, which sustained an additional assessment of personal income taxes against plaintiffs for the calendar year 1958.

In 1958, plaintiffs owned a farm situated in Linn and Lane Counties, Oregon. During that year, the State of Oregon, acting through its State Highway Department, threatened to condemn 44.6 acres of plaintiffs' farm as right-of-way for Interstate 5, a nonaccess freeway. This condemnation would divide plaintiffs' farm into two separate properties, would reduce the value of plaintiffs' remaining land and improvements, and would force plaintiffs to travel a

substantial distance from one parcel of land to reach the other. After extensive negotiations, and under the threat of condemnation, plaintiffs agreed to convey the desired land to the state for $32,000.

During the negotiations the appraisers and right-of-way agents of the Highway Commission discussed with plaintiffs the elements of the taking and the fact that a substantial part of the price to be paid was for depreciation of the remaining land. During the negotiations the parties were in substantial, though not specific, agreement on land values and the basis of dispute was the amount to be allowed as damages to the remainder. Plaintiffs were advised throughout by legal and accounting counsel. On or about September 16, 1958, plaintiffs' accountant recommended to them in writing that, for tax purposes, they demand that the severance damages be separately stated and identifiable in any agreement they sign. At or before this time they had received the same advice from their legal counsel.

When plaintiffs did request that the severance damages be separately stated, the highway agents informed them that this was impossible. At that time, and again on the witness stand, the right-of-way agent stated that it was, and is, a settled policy of the State Highway Department not to allocate between land price and damages in a contractual award. It appeared that this policy is based upon a desire not to become engaged in controversies over this collateral issue and upon the further desire not to get into an allocation dispute with the Bureau of Public Roads, which supplies over 90 per cent of interstate highway construction funds.

On October 22, 1958, the plaintiffs executed a real estate option to the Highway Commission to sell the

desired land for $32,000. They executed this document in their lawyer's office and the right-of-way agent was present. The option was a printed Highway Department form and recited that the lump sum award was to be paid "as full payment of the purchase price of said real estate, including all damages, if any there be, by reason of the taking and use thereof, * * *." Again the matter of allocation of the award was brought up, and the right-of-way agent again refused to allocate the award in the agreement but promised to provide plaintiffs with the Highway Department's allocation after the option was accepted by the commission. On October 23, 1958, upon presentation of the option and the allocation of values made by the right-of-way agent, the Highway Commission accepted the option as presented. The Highway Department supplied its award allocation to plaintiffs by letter dated November 26, 1958. It showed the land price to be $11,634.50 and damages to the remainder to be $20,365.50. Other evidence showed that this land price was a composite of various values ranging from $225 an acre to $325 an acre. These values are substantially those which plaintiffs deemed correct during their negotiations.

On their 1958 personal income tax returns plaintiffs reported $11,634.50 (the figure obtained from the Highway Commission) as the purchase price of land sold to the state. They treated the balance of the award as damages to the remaining land and therefore chargeable against their basis of the remaining land and not presently taxable except to the extent that the damages exceeded their basis in the remaining land. After audit and upon a formal appeal to it, defendant assessed additional tax against plaintiffs upon the theory that the entire award was

taxable because it was a lump sum award and not allocated in the agreement between land price and damages.

The foregoing facts and legal contentions, as well as the record and briefs, bring this case squarely within the rule announced by this court this day in *Wassom v. Commission,* 1 OTR 468. For the reasons set forth in that decision, it is the opinion of this court that the additional assessment in issue in this case should be set aside. While the facts of this case are not identical with those of the *Wassom* case, they support just as strongly a holding identical with that of the *Wassom* case.

Plaintiffs shall submit a decree in conformity with this decision under Rule 32.